# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

CARDELL HUNES                                                                    PETITIONER
ADC #76654

VS.                              5:16-CV-00232 BSM/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                                          RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Background

Pending before the Court is a § 2254 habeas Petition filed by Petitioner, Cardell Hunes ("Hunes"). *Doc. 2.* He attacks a prison disciplinary conviction and

resulting punishment he received while incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC").[1]  Doc. 2.

On November 6, 2015, ADC correctional officers received a written statement from fellow inmate, Casey Fyke ("Fyke"), who alleged that Hunes had sexually propositioned him multiple times.  Fyke further alleged that Hunes slapped him the last time Fyke rejected Hunes' advances.  Doc. 5-2.  The ADC launched an investigation into Fyke's allegations. Doc. 5-3.

On November 7, 2015, Hunes made a written statement in which he categorically denied making any sexual comments to Fyke or having "any knowledge about [his] sexual life." Doc. 5-4.

On December 10, 2015, after the completion of the ADC's investigation, Hunes was charged with three disciplinary violations stemming from his alleged contact with Fyke:  (1) failure to obey an order of staff;  (2) lying to a staff member; and (3) making sexual proposals to another person. *Doc. 2 at 2-3, 9*; *Doc. 5-6*.

On December 18, 2015, Hunes attended a disciplinary hearing on the pending charges. When Hunes was given an opportunity to make a statement, he complained to Disciplinary Hearing Officer Keith Waddle ("DHO Waddle") that the

---

[1] In 1981, Hunes was convicted of rape, aggravated robbery, and kidnapping and sentenced to a total of 170 years' imprisonment. *Hunes v. State*, 274 Ark. 268 (1981).

2

"investigation . . . was not done according to policy" and investigators used a CVSA[2] in questioning him in violation of state and federal laws. *Doc. 2 at 10-11.* DHO Waddle found Hunes guilty on all three disciplinary charges and imposed the following punishment: (1) 30 days in punitive isolation; (2) a reduction in good-time classification; and (3) forfeiture of 365 days of good-time credit. *Id*

On December 21, 2015, Hunes appealed to the Warden. On December, 28, 2015, the Warden affirmed the decision. *Doc. 2 at 13*. Hunes appealed to the Disciplinary Hearing Administrator and to Director Wendy Kelley, both of whom upheld the disciplinary convictions. *Doc. 2 at 15-16*.

In his habeas Petition, Hunes argues that he was denied due process because: (1) prison officials failed to follow internal policy, procedures and regulations in conducting their investigation into the misconduct allegations; (2) he was not permitted to submit a form entitled "Extension of Investigation Status"[3] into evidence at his hearing; and (3) DHO Waddle was biased. *Doc. 2 at 6-7*. Hunes requests the Court to reverse the DHO decision, restore his forfeited good-time credit, reassign him back to the general population, and restore his job assignment in the general population. *Doc. 2 at 7*.

---

[2] "CVSA" stands for "Computer Voice Stress Analyzer." *Doc. 5 at 6*. It appears that investigators used a CVSA in questioning Hunes and determined that his answers were deceptive. *Doc. 2 at 9*.

[3] The form is hereafter referred to as the "Extension of Investigation form."

3

Respondent argues that Hunes' habeas claims are either: (1) not cognizable in a federal habeas action; or (2) fail on the merits. *Doc. 5.* For the reasons discussed below, the Court agrees with Respondent and recommends that Hunes' Petition for a Writ of Habeas Corpus be denied and the case dismissed, with prejudice.

## II. Discussion

### A. Hunes' Challenge to the Forfeiture of Lost Good-Time Credit is His Only Cognizable Claim for Federal Habeas Relief

In *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974), the Court held that a disciplinary conviction which results in a prisoner losing *good time credits* implicates a liberty interest protected by the Due Process Clause. Because the loss of good time credits affects the length of a prisoner's confinement, a habeas action is a prisoner's *exclusive* remedy to challenge the constitutionality of the final disciplinary conviction. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002). However, if a prison disciplinary conviction *does not* result in the elimination of good-time credits, it has no effect on the length of the underlying sentence and "raise[s] no claim on which habeas relief could have been granted on any recognized theory." *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004).

Because Hunes' disciplinary conviction resulted in the loss of 365 days of good-time credit, that portion of his claim can support habeas relief. Hunes' "other claims," which challenge the 30 days he spent in punitive isolation and the reduction

in his good-time classification, are *not* cognizable in a habeas action.[4] *Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073–74 (8th Cir. 1996).

### B. The ADC's Disciplinary Decision to Reduce Hunes' Good-Time Credits Did Not Violate His Due Process Rights

In a prison context, procedural due process requires only that a disciplinary proceeding afford a prisoner the following rights: (1) written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, for a prisoner to call witnesses and present documentary evidence in his defense; and (3) a written statement from an impartial decision maker identifying the evidence relied on to support the disciplinary convciction and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. at 563-67.

---

[4] As to these "other claims," the Court has considered whether Hunes might be able to assert them as a due process violation under 42 U.S.C. § 1983. *Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014) (before dismissing habeas petition raising conditions-of-confinement claims, district court should consider whether the prisoner has raised a "potentially viable" constitutional claim and, if so, whether his case should be recharacterized as a civil rights action).

Changes to a prisoner's classification status and placement in punitive isolation for relatively short intervals do *not* constitute the type of "atypical and significant" hardships necessary to trigger the protection of the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 482–86 (1995) (holding that the due process clause applies only when prison officials impose an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life"); *Portley-El v. Brill*, 288 F .3d 1063, 1065–66 (8th Cir. 2002) (holding that thirty days in punitive segregation was not an atypical and significant hardship under *Sandin*); *Sanders v. Norris*, 153 Fed. Appx. 403, 404 (8th Cir. 2005) (affirming pre-service dismissal of inmate's § 1983 claim challenging post-disciplinary reduction in class status and thirty days in punitive isolation). Thus, there is no legal basis for recharacterizing Hunes' other claims under § 1983.

Additionally, if a prison disciplinary action results in the loss of good time credits, there must be "some evidence" in the record to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 454-56 (1985). "Some evidence" has been defined as "any evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id*. at 455-56 (emphasis added). This minimal evidentiary standard obligates federal courts to defer to the judgment of prison officials as long as the due process requirements of *Wolff* are satisfied and "there is *any* evidence in the record that *could* support the conclusion reached." *Hill*, 472 U.S. at 455-56 (emphasis added).

    **(1)    Hunes' Alleged Due Process Claims**

        **(a)    Documentary Evidence**

Hunes complains that, during his disciplinary hearing, DHO Waddle did not allow him to introduce into evidence the Extension of Investigation form. *Doc. 2 at 12*. He further complains that on the form, none of the boxes next to the five pre-printed reasons for extending the investigation were checked.[5] Hunes does not explain how the fact someone overlooked checking one of the boxes prejudiced him or otherwise effected the outcome of the disciplinary hearing.

---

[5] This form, which Hunes signed, stated that the investigation was being extended for five working days, from "November 26, 2015" to "December 3, 2015." Petitioner's Exh. C, *Doc. 2 at 12*. The explicit written notation that the investigation was being extended seemingly makes it clear that, of the five unchecked boxes, the only one that is applicable is the last box: "The case requires more extensive investigation." *Id*. A fair reading of this form makes it clear that Hunes' "box check argument" is an attempt to make a mountain out of a molehill.

Even if one accepts Hune' argument that it was a technical violation of ADC policy for one of the five boxes on the form *not* to be checked and that he was denied the right to introduce the form into evidence during his disciplinary hearing, neither of these ADC rule violations rises to the level of violating Hunes' *constitutional rights* under the Fourteenth Amendment. A federal court may issue a writ of habeas corpus *only* for a violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995). Thus, as to Hunes' claim that prison officials failed to properly check one of the boxes on the Extension of Investigation form, this may have been a violation of *ADC rules*, but it cannot support a due process claim under the Fourteenth Amendment.

As to Hunes' argument that he was somehow harmed by not being allowed to introduce the Extension of Investigation form into evidence at his disciplinary hearing, there is *nothing* in that document which would have aided his defense, much less altered the outcome of the disciplinary proceeding. *See Howard v. United States*, 487 F.3d 808 (10th Cir. 2007) (applying harmless error analysis to due process claim that prison officials denied requested witness testimony at hearing); *Powell v.*

*Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (constitutional violation in adjudicating prison disciplinary proceeding is subject to harmless error analysis).

Finally, Hunes does not contend that the extension of the investigation for five days adversely impacted *either* his ability to present a defense or the outcome of his disciplinary hearing. If anything, the extension of the period for investigating the incident gave Hunes *more time* to prepare for his disciplinary hearing. In requiring that inmates must receive at least 24 hours notice, between the filing of disciplinary charges and the hearing to resolve those charges, the Court in *Wolff* was concerned with ensuring that prisoners had an adequate opportunity "to marshal the facts and prepare a defense." *Wolff,* 418 U.S. at 564. Here, Hunes had at least 8 days between formally being charged on December 10th and the disciplinary hearing on December 18th. This was more than ample time for Hunes to prepare his defense. Yet, when permitted to make a statement at his disciplinary hearing, Hunes only complained about the technical error in the Extension of Investigation form and investigators using a CVSA to question him, without offering any defense, *on the merits*, to the charges against him.

In short, Hunes has failed to identify any adverse impact on the disciplinary proceeding or its outcome from: (1) prison officials extending their investigation of the incident for five days; or (2) him not being allowed to introduce the Extension of Investigation form into evidence. Accordingly, these allegations by Hunes do not

support any violation of his due process rights before, during, or after the disciplinary hearing.

### (b) DHO's Impartiality

Hunes argues that DHO Waddle was biased because he: (1) refused to turn on the tape recorder so that a record could be made of the hearing; (2) refused to permit Hunes to introduce the Extension of Investigation form; and (3) failed to follow other prison rules and regulations. Assuming these allegations are true, they do not call into question whether the DHO met minimum constitutional standards for impartiality.

"The nature of prison disciplinary proceedings compels the courts to give wide latitude to prison officials in the manner in which they conduct these proceedings." *Ivy v. Moore,* 31 F.3d 634, 635 (8th Cir. 1994). Disciplinary hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *See Piggie v. Cotton,* 342 F.3d 660, 666 (7th Cir. 2003). For a petitioner to prevail on a claim that a DHO was biased, he must show that officer's conduct "gave [the officer] an interest adverse to [the inmate's] 'so direct, personal, and substantial as to give rise to a due-process violation.'" *See Ivy v. Moore,* 31 F.3d 634, 635 (8th Cir. 1994).

Hunes' allegations that DHO Waddle failed to turn on the tape recorder, refused to allow him to introduce the form and otherwise failed to follow internal

9

rules are not sufficient to establish an adverse interest "so direct, personal, and substantial" as to give rise to a due process violation. There is simply no evidence in the record that DHO Waddle had any personal interest in the circumstances giving rise to the charges against Hunes or in the resolution of those charges. At most, Hunes' claim is that DHO Waddle failed to follow internal prison rules and regulations applicable to disciplinary hearings. As previously discussed, violations of prison rules and regulations, even if proven, do not rise to the level of a federal constitutional violation of any of Hunes' due process rights.

### (c) Investigators' Use of Computer Voice Stress Analysis to Question Hunes

Hunes asserts that prison officials relied, in part, on the results of a CVSA to support their decision to charge him with disciplinary violations, and DHO Waddle also relied on that evidence to find Hunes guilty of the charges. According to Hunes, the use of and reliance on the CVSA violated his due process rights.[6] While evidence from voice stress analysis and its predecessor, the polygraph, is not admissible in judicial proceedings,[7] the use of such evidence in prison disciplinary proceedings

---

[6] Prison investigators concluded, based on the CVSA results, that Hunes was being deceptive in answering their questions. *Doc. 2 at 9*. Although it is unclear to what extent DHO Waddle relied on the CVSA results to find Hunes guilty of the charges, this was *not* the only evidence against Hunes. Fyke's statement provided additional direct evidence against Hunes. In addition, Hunes apparently had a history of engaging in similar misconduct. Within the past six months, he had been charged with a second or subsequent offense for making sexual proposals.

[7] By statute, all Arkansas law enforcement agencies "are authorized to use a psychological stress evaluation instrument to test or questions individuals for the purpose of determining and

has been repeatedly upheld.[8]  Hunes cites no legal authority to support his argument that the ADC's use and reliance on CVSA results violated his constitutional rights, and this Court's research has located no such legal authority.  Thus, investigators' use of a CVSA in questioning Hunes, and DHO Waddle's consideration of those results to support his verdict that Hunes was guilty of the charges did not constitute a violation of any of Hunes' federal constitutional rights.

### (2) "Some Evidence" Supports Each of Hunes' Disciplinary Convictions

While it is unclear whether Hunes is arguing that his convictions were not supported by "some evidence," the Court will address that issue out of an abundance of caution.  In undertaking this limited review, the Court is *not* required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh evidence. *Hill*, 472 U.S. at 455.  Prison officials can permissibly rely on violation reports and hearsay to find inmates guilty of disciplinary infractions. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). Finally, the Eighth Circuit has held that, as long as the disciplinary proceeding is conducted by an impartial

---

verifying the truth of statements." Ark. Code Ann. §§ 12-12-701.  The results of such examinations "shall be inadmissible" in all Arkansas courts. Ark. Code Ann. § 12-12-704. *Houston v. Lockhart*, 982 F.2d 1246, 1251 (8th Cir. 1993) (discussing application of statute).

[8] *See*, *e.g.*, *Lenea v. Lane*, 882 F.2d 1171, 1174 (7th Cir. 1989) ("in prison disciplinary hearings, polygraph results are routinely admitted and relied upon"); *Toussaint v. McCarthy*, 926 F.2d 800, 802-803 (9th Cir. 1990) (use of polygraph to help resolve question of whether inmate had given up his gang affiliation did not violate due process and also qualified as some evidence under *Hill*).

11

decision maker, a report from a correctional officer constitutes "some evidence" upon which to base a disciplinary decision. *See Hartsfield,* 511 F.3d at 831. The "some evidence" standard is satisfied even if the inmate disputes the facts in the report and the only support for the DHO's decision is the report itself. *Id.*

Here, DHO Waddle was faced with a situation in which either Fyke or Hunes was lying about the charges. DHO Waddle accepted Fyke's version of what took place. He also credited the internal investigation into the allegations, which found that Hunes "lied to staff and made a sexual proposal to another inmate [Fyke]." *Doc. 5-8 at 2*. Finally, DHO Waddle relied on the charging officer's disciplinary report,[9] in which he stated that the investigation supported Fyke's complaint of sexual misconduct and also found that Hunes had been deceptive. This clearly constituted "some evidence" that Hunes committed each of the three disciplinary charges.

### III. Conclusion

The Court concludes that Hunes' disciplinary hearing satisfied the minimal due process requirements of *Wolff* and that none of Hunes' due process rights were violated. Additionally, "some evidence in the record" supports DHO Waddle's decision on each of the disciplinary charges. Accordingly, Petitioner Hunes' claims related to his disciplinary convictions are either not cognizable claims for federal

---

[9] Major Disciplinary Form F-831-1. *Doc. 5-6.*

habeas relief or he has failed to demonstrate that his constitutional rights were violated in connection with his December 18, 2015 disciplinary hearing.

IT IS THEREFORE RECOMMENDED that the Petition for a Writ of Habeas Corpus, (*doc. 2*), be DENIED, and that the case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 7th day of February, 2017.

_____
UNITED STATES MAGISTRATE JUDGE